

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

June 28, 2016

The Honorable Dan Patrick
Lieutenant Governor of Texas
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0100

Re: Whether the Fort Worth Independent School District transgender guidelines violate chapter 26 of the Education Code and whether the superintendent had authority to adopt the guidelines without a vote by the school board or public comment (RQ-0107-KP)

Dear Governor Patrick:

You ask whether the "Transgender Guidelines" adopted by the Fort Worth Independent School District ("FWISD") superintendent violate chapter 26 of the Education Code and whether the superintendent had authority to adopt them without adoption by a school board vote and without public comment.[1] As background, the superintendent adopted the Transgender Student Guidelines in April of this year with the stated purpose of providing "direction for personnel to address issues that may arise concerning the needs of and challenges facing transgender students."[2] The Guidelines state that they "are mandatory for the 2015–2016 school year," and failure to comply with them "may result in adverse employment action." Guidelines at 1. District staff developed the Guidelines, and they were approved by the FWISD superintendent.[3] You explain that this was done "without adoption by school board vote and without public comment from parents and citizens." Request Letter at 1.

You first ask whether these Guidelines violate chapter 26 of the Education Code in their "effort to keep student information from parents." Id. The answer to your question hinges on a proper understanding of the framework of parental rights as they relate to public education. As the United States Supreme Court has explained repeatedly since 1923, parents have the

---

[1]See Letter from Honorable Dan Patrick, Lt. Gov., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (May 31, 2016) ("Request Letter"), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs.

[2]Fort Worth ISD Transgender Student Guidelines at 2 ("Guidelines") (attached to Request Letter).

[3]See Guidelines Approval Form (attached to Request Letter).

fundamental right to make decisions concerning the care, custody and control of their child.[4] To implement this guiding principle in the context of public education, the Legislature has imposed a delicate balance of the parents' fundamental right to direct the upbringing of their child with the public school official's need to direct the education of children in Chapter 26 of the Education Code, titled "Parental Rights and Responsibilities." *See* TEX. EDUC. CODE §§ 26.001–.013. In adopting that chapter, the Legislature emphasized that "[p]arents are partners with educators, administrators, and school district boards of trustees in their children's education. Parents shall be encouraged to actively participate in creating and implementing educational programs for their children." *Id.* § 26.001(a). Chapter 26 also provides that "[u]nless otherwise provided by law, a board of trustees, administrator, educator, or other person may not limit parental rights." *Id.* § 26.001(c). With regard to student records, "[a] parent is entitled to access to all written records of a school district concerning the parent's child." *Id.* § 26.004.[5] In addition, a "parent is entitled to full information regarding the school activities of a parent's child except as provided by Section 38.004." *Id.* § 26.008(a). "An attempt by any school district employee to encourage or coerce a child to withhold information from the child's parent is grounds for discipline." *Id.* § 26.008(b).[6]

Multiple provisions in the Guidelines relate to parental access to information about transgender students. Under the title "Privacy and Confidentiality," the Guidelines state:

> All students have a right to privacy. This includes keeping a student's actual or perceived gender identity and expression private. *School personnel may only share this information on a need-to-know basis or as the student directs. This includes sharing information with the student's parent or guardian.* When contacting the parent or guardian or a transgender student, school personnel must use the student's legal name and the pronoun corresponding to

---

[4]*See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000) (observing that "the interest of parents in the care, custody, and control of their children[ ]is perhaps the oldest of the fundamental liberty interests recognized by this Court"); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing the "fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (holding that the parents have the right "to direct the upbringing and education of children under their control"); *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923) (holding that parents have a right to "establish a home and bring up children" and "to control the education of their own").

[5]Section 38.004 requires the Texas Education Agency to adopt a policy governing the reports of child abuse or neglect, and it "must provide for cooperation with law enforcement child abuse investigations without the consent of the child's parents if necessary." TEX. EDUC. CODE § 38.004(a).

[6]Although you ask only about chapter 26 of the Education Code, the federal Family Educational Rights and Privacy Act ("FERPA") likewise generally grants parents "the right to inspect and review the education records of their children." 20 U.S.C. § 1232g(a)(1)(A).

the student's gender assigned at birth unless the student, parent, or guardian has specified otherwise.

If a parent or guardian requests access to his/her student's educational records as defined by FERPA, access must be provided. A request by a parent or guardian for educational records under FERPA may include unofficial records directly related to the student, including records containing a student's actual or perceived gender identity. The Office of Legal Counsel should be advised when a request for student records is made and a transgender student's privacy may be of concern (e.g. when the student has not yet disclosed gender identity status to a parent or guardian).

FWISD Guidelines at 5 (emphasis added). The Guidelines also include a section titled "Student Transitions," wherein they provide:

In most cases, transitioning is a very private matter. Students may choose whether or not to have their parents participate in this process. . . .

Prior to notifying any parent or guardian regarding the student's gender identity or any potential transition process, school personnel must work closely with the student to assess the degree to which, if any, the parent or guardian has been or will be involved in the process.

*Id.* at 6.

Far from creating a partnership between parents, educators, and administrators regarding their children's education, the Guidelines relegate parents to a subordinate status, receiving information only on a "need-to-know basis." Limiting parents' access to information in this way impairs their ability to "actively participate" in the children's education, contrary to state law. *See* TEX. EDUC. CODE § 26.001(a). Furthermore, the provision requiring school personnel to "work closely with the student" to determine to what extent, if any, a parent will be involved in the student's transitioning suggests that employees could, pursuant to these restrictions, encourage some children to withhold information from a parent. *See* Guidelines at 6. Such action is both against state law and grounds for discipline under the Education Code. *See* TEX. EDUC. CODE §§ 26.001(c), 26.008(a)–(b). Thus, to the extent that the Guidelines limit parental access to information about a parent's child and operate to encourage students to withhold information from their parents, they violate chapter 26 of the Education Code.[7]

---

[7]In briefing submitted to this office, FWISD argues that "there are times when the law precludes sharing of private information." *See* Letter from Valerie Carrillo, Gen. Counsel, Fort Worth Indep. Sch. Dist., to Honorable Ken

You also ask whether the FWISD superintendent had "the authority to unilaterally adopt this policy without adoption by school board vote and without public comment." Request Letter at 1. Chapter 11 of the Education Code establishes requirements for school district organization and governance in Texas public schools. *See* TEX. EDUC. CODE §§ 11.001–.356. School districts are governed by boards of trustees who "oversee the management of the district" and "ensure that the superintendent implements and monitors plans, procedures, programs, and systems to achieve appropriate, clearly defined, and desired results in the major areas of district operations." *Id.* § 11.051(a). Addressing the collaboration between the board of trustees and the superintendent, subsection 11.1512(a) provides that the "superintendent shall, on a day-to-day basis, ensure the implementation of the policies created by the board." *Id.* § 11.1512(a). Furthermore, the "board of trustees and the superintendent shall work together to . . . establish district-wide policies . . . ." *Id.* § 11.1512(b)(4). Section 11.201 separately outlines the duties of the superintendent, which include, among others:

> (1) assuming administrative responsibility and leadership for the planning, organization, operation, supervision, and evaluation of the education programs, services, and facilities of the district . . .;
>
> (5) managing the day-to-day operations of the district as its administrative manager, including implementing and monitoring plans, procedures, programs, and systems to achieve clearly defined and desired results in major areas of district operations; . . .
>
> (7) preparing recommendations for policies to be adopted by the board of trustees and overseeing the implementation of adopted policies; [and]
>
> (8) developing or causing to be developed appropriate administrative regulations to implement policies established by the board of trustees[.]

---

Paxton, Tex. Att'y Gen. at 1 (June 14, 2016) ("FWISD Brief"). FWISD points to section 38.004 of the Education Code, which requires school districts to cooperate with law enforcement child abuse investigations without the consent of the child's parents if necessary, and chapter 32 of the Family Code, which enumerates specific situations when a child may consent to treatment of counseling without parental consent. *See* FWISD Brief at 1–2; TEX. EDUC. CODE § 38.004(a); TEX. FAM. CODE §§ 32.001–.005. This office has recognized that in "very narrow and unusual circumstances," state law may authorize a school to withhold some information from a parent, and FWISD explains in its briefing that "[a]bsent such circumstances, District personnel involve parents in all student matters, including gender identity issues." FWISD Brief at 2; *see also* Tex. Att'y Gen. Op. No. JC-0538 (2002) at 7–8 (explaining that a school may withhold a minor child's counseling records from a parent in very limited and specific circumstances when the child's health or safety is a concern). However, the Guidelines do not currently specify that these are the only circumstances when parental access to information should be limited and instead appear to more broadly restrict parental access to information, in violation of state law. In briefing, FWISD explains that "it intends to clarify" this portion of the regulations in the future. FWISD Brief at 2.

*Id.* § 11.201(d). When viewed as a whole, chapter 11 thus gives superintendents authority over the day-to-day management of the district, but it requires that boards of trustees adopt general policies for the district. Superintendents then implement those policies through the development of administrative regulations.

FWISD explains that it adopted the Guidelines "as an administrative regulation aimed at appropriately implementing Board Policy FFH (LOCAL)." FWISD Brief at 2. FWISD Board Policy FFH "prohibits discrimination, including harassment, against any student on the basis of . . . gender identity and expression," in addition to other potential bases of discrimination.[8] The policy defines discrimination and harassment, provides examples of how those may occur, outlines reporting and investigation procedures, and describes corrective actions that may be used. Policy FFH at 1–8. However, nowhere in Policy FFH has the board of trustees adopted a policy limiting a parent's involvement or access to information regarding a student's gender identity, and, as discussed above, doing so would have likely violated state law. Instead, the few references to "parent" in Policy FFH require notice to parents and allow for their involvement concerning a student who has faced harassment or discrimination. *See id.* at 5, 7 ("The District official or designee shall promptly notify the parents of any student alleged to have experienced prohibited conduct by a District employee or another adult."). While the superintendent has characterized these regulations as Guidelines that "are in alignment with Board Policy FFH (Local)," decisions to withhold information from a parent regarding a student's gender identity or suggest that employees might work with a student to restrict parental involvement are in fact significant and controversial matters of policy that do not appear to have been previously addressed by the FWISD board of trustees.[9] *See Stedman v. Georgetown Savs. & Loan Ass'n,* 595 S.W.2d 486, 489 (Tex. 1979) (explaining that courts look behind labels and to determine the actual substance of action taken). While a superintendent is authorized to recommend policies to be adopted by the board, chapter 11 requires that policy decisions, like those addressing parental involvement with students' gender identity choices, be addressed by the board of trustees prior to the development of any related administrative regulations.[10] *See* TEX. EDUC. CODE § 11.201(d)(7) (authorizing the superintendent to prepare "recommendations for policies to be adopted by the board of trustees and overseeing the implementation of adopted policies").

---

[8]*See* Fort Worth Indep. Sch. Dist. Bd. Policy FFH (LOCAL), *available at* http://pol.tasb.org/Policy/Download/1101?filename=FFH%28LOCAL%29.pdf ("Policy FFH").

[9]Guidelines Approval Form (attached to Request Letter).

[10]The FWISD board of trustees would be required to conduct deliberations and make decisions about such policies at an open meeting to which the public has access. *See* TEX. GOV'T CODE §§ 551.002 (requiring open meetings for governmental bodies), .001(3)(E) (defining "governmental body" to include "a school district board of trustees"), .001(5) (defining "open" to mean "open to the public).

## S U M M A R Y

Chapter 26 of the Education Code provides that parents must have access to all written records of a school district concerning their child, as well as full information regarding the child's school activities. Attempts to encourage a child to withhold information from his or her parents may be grounds for discipline. To the extent that the Transgender Student Guidelines adopted by the Fort Worth Independent School District superintendent limit parental access to information about their child and operate to encourage students to withhold information from parents contrary to the provisions in chapter 26, they violate state law.

Chapter 11 of the Education Code requires that boards of trustees adopt policies for the district, while superintendents implement those policies by developing administrative regulations. While a superintendent is authorized to recommend policies to be adopted by the board, chapter 11 requires that policy decisions, like those addressing parental involvement with students' gender identity choices, be addressed by the board of trustees prior to the development of any related administrative regulations.

Very truly yours,

KEN PAXTON
Attorney General of Texas


JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee